USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.G.V.A., By his Next Friend and Father, Luis Edgar Vimos Rivera,

Petitioner,

-against-

Lorraine M. Sanchez, Chief Executive Officer, Cayuga Centers, in her official capacity as facility custodian; Angie Salazar, Director, Office of Refugee Settlement, U.S. Department of Health and Human Services, in her official capacity; Robert F. Kennedy, Jr., Secretary, U.S. Department of Health and Human Services, in his official capacity,

Respondents.

1:26-cv-02258-MKV

ORDER DISMISSING AS MOOT PETITION FOR A WRIT OF HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

Petitioner, a three-year-old child, was encountered by U.S. Customs and Border Protection ("CBP") in Texas on November 22, 2025. That day, CBP determined that Petitioner was an unaccompanied alien child ("UAC") and transferred him to the custody of the Office of Refugee Resettlement ("ORR") pursuant to 8 U.S.C. § 1232(b).

On March 18, 2026, Petitioner initiated this action by filing a petition for a writ of habeas corpus by his next friend Luis Edgar Vimos Rivera ("Rivera") under Title 28 United States Code Section 2241. [ECF No. 1]. In the Petition, the next friend principally seeks immediate release of the child and argues, among other things, that ORR lacks statutory authority to continue to hold him as an UAC. The next friend argues that Petitioner cannot be classified as an UAC subject to ORR's custody given that Rivera, his father, is present in the United States and has complied with all requirements in submitting a sponsor application with ORR to take custody of Petitioner.

On March 19, 2026, the Court ordered Respondents (the "Government") to show cause why the Petition should not be granted. [ECF No. 5]. In response, the Government filed a memorandum of law in opposition ("Opp'n"), [ECF No. 7], supported by a declaration of Toby Biswas, Assistant Deputy Director for Policy for the Unaccompanied Alien Children Bureau (the "Biswas Decl."). [ECF No. 8]. In its opposition, the Government explained that ORR was vetting Rivera's sponsor application but agreed to "expedite the processing of DNA testing"—the last step of the process—and would determine promptly upon receipt of the DNA results whether to grant Rivera's sponsor application. Opp'n at 1. Petitioner filed a reply ("Reply"). [ECF No. 10]. The Court ordered the Government to file a letter by March 30, 2026, advising the Court of the results of the DNA testing and whether ORR will release Petitioner to Rivera. [ECF No. 9].

Thereafter, both parties submitted letters advising that Petitioner had been released from ORR custody and been reunited with Rivera on March 27, 2026. [ECF Nos. 11, 12]. However, the parties disputed whether the case was moot as a result. [ECF Nos. 11, 12]. In turn, with leave of Court, the Government filed a letter arguing that the Court should dismiss the Petition as moot. [ECF No. 14 ("Mootness Mem.")]. Petitioner filed a letter in opposition, [ECF No. 15 ("Mootness Opp'n")], with an attached Declaration of Luis Edgar Vimos Rivera ("Rivera Declaration" or "Rivera Decl.") [ECF No. 15-1].

For the reasons set forth below, the Petition is dismissed as moot.

## BACKGROUND

The day after Petitioner was transferred into ORR custody as an UAC, ORR identified Petitioner's uncle as a potential sponsor who could assume custody of Petitioner and attempted to contact him. Biswas Decl. ¶¶ 28-29. On November 26, 2025, ORR learned that Rivera was in the United States and living with Petitioner's uncle. Biswas Decl. ¶ 29. On December 4, 2025,

Petitioner's uncle stated he would not be a sponsor as Rivera instead decided to be a sponsor for Petitioner. Biswas Decl. ¶ 31. On January 7, 2026, ORR made two attempts to contact Rivera but did not receive a response. Biswas Decl. ¶ 32. On February 3, 2026, ORR contacted Rivera and sent him the sponsor application for Petitioner. Biswas Decl. ¶ 34.

On February 8, 2026, ORR received Rivera's sponsor application and authorization to conduct required background checks. Biswas Decl. ¶ 35. As part of ORR's vetting process, Rivera attended his fingerprint appointment and provided proof of address in February 2026. Biswas Decl. ¶¶ 36-38. On March 4, 2026, Rivera's child abuse/neglect check came back "clear." Biswas Decl. ¶ 41. At some point, Rivera's in-person ID check and DNA testing were scheduled for March 23, 2026. Biswas Decl. ¶ 42.

The sponsor application remained pending on March 18, 2026 when Rivera, as next friend, filed this habeas Petition. *See generally* Pet. In response, the Government advised that ORR would expedite the DNA testing and promptly make a decision on Rivera's sponsor application once it obtained the DNA testing results. Opp'n at 1; *see also* Biswas Decl. ¶¶ 43-44 (noting that ORR expects to receive the DNA results by March 27, 2026 and will make a determination on the sponsor application within 48 hours thereafter).

On March 27, 2026, ORR, after completing the final step of its vetting process, approved Rivera's sponsor application and released Petitioner to him. [ECF Nos. 11, 12].

## DISCUSSION

Under Article III of the U.S. Constitution, the judicial power is limited to the adjudication of cases or controversies. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021). Consistent with this principle, a court lacks jurisdiction to consider the merits of a moot case given it is no longer a case or controversy within the meaning of Article III. *Chevron Corp. v. Donziger*, 833 F.3d 74,

120 (2d Cir. 2016). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" no matter how intensely the parties continue to litigate the lawfulness of the conduct that precipitated the lawsuit. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). To avoid mootness, the plaintiff, throughout the litigation, "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

**I. The Case is Moot.**

The Second Circuit has made clear that a habeas corpus petition seeking release from immigration custody is generally mooted upon release. *Pierrilus v. U.S. Immigration and Customs Enforcement*, 293 F. App'x 78, 79 (2d Cir. 2008) (finding release mooted habeas challenge to length of detention and noting that under 28 U.S.C. § 2241 a court retains jurisdiction only so long as the petitioner is "in custody"). Numerous courts in this district have dismissed as moot a habeas petition seeking release where the Petitioner has been released. *See Berrezueta v. Decker*, No. 20-cv-10688 (MKV), 2021 WL 601649, at *1 (S.D.N.Y. Jan. 11, 2021) (collecting cases); *see also Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). Nonetheless, a released petitioner can avoid mootness if he or she can demonstrate "collateral consequences" from their detention that can be redressed by a favorable decision concerning the Petition. *Kemna*, 523 U.S. at 7; *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 492 (S.D.N.Y. 2018).

Here, the Petition seeks "immediate[] release" or, alternatively, "an individualized custody determination." Pet. at 12. Petitioner's release—the precise relief he sought—has rendered the Petition moot; he "is no longer suffering an 'actual injury'" that could be redressed by a favorable

decision of this Court. *Leybinsky v. U.S. Immigration and Customs Enforcement*, 553 F. App'x 108, 109 (2d Cir. 2014); *Pierrilus*, 293 F. App'x at 79 ("Petitioner's challenge to the length of his detention is moot as a result of his release from DHS custody."); *see also Alcine v. Decker*, No. 17-cv-3754 (RA), 2019 WL 988944, at *1 (S.D.N.Y. Feb. 19, 2019) (finding habeas petition moot where petitioner received his requested relief and was released); *Pierre-Paul*, 293 F. Supp. 3d at 492 ("Ms. Paul has been released and plans for her removal have been cancelled. She has received the relief that was sought in her habeas proceeding, and so the action is now moot."). Further, Plaintiff has not identified any collateral consequences stemming from his detention—and the Court is aware of none—that would constitute a live case or controversy in light of his release. *Kemna*, 523 U.S. at 7-8 (describing collateral consequences as "concrete disadvantages or disabilities that had in fact occurred, that were imminently threatened, or that were imposed as a matter of law (such as deprivation of the right to vote, to hold office, to serve on a jury, or to engage in certain businesses)"); *see also Berrezueta*, 2021 WL 601649, at *2; *Depina v. Shanahan*, No. 11-cv-1867 (PKC), 2011 WL 3586440, at *2–3 (S.D.N.Y. Aug. 2, 2011) (dismissing habeas petition as moot where released petitioner "ha[d] not made any attempt to demonstrate that he suffered any collateral consequences that could cause continued injury due to his now-terminated detention").

Petitioner argues that a live controversy exists because he seeks declaratory relief that the Government acted outside its statutory authority in keeping Petitioner in ORR custody. *See* Mootness Opp'n at 4 (citing *Kemna*, 523 U.S. at 7). However, the only cited authority merely held that a case is not moot where a party establishes continuing collateral consequences, which Petitioner has not done here. *Kemna*, 523 U.S. at 7. In any event, declaratory judgment does not provide a basis for jurisdiction and is not a cause of action, but rather provides a form of relief that

Petitioner did not even seek in this case. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) (Declaratory Judgment Act is procedural and does not "create an independent cause of action") (citation omitted); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (the Declaratory Judgment Act "provides no independent basis for subject matter jurisdiction").

As numerous courts have held, requesting declaratory judgment that prior detention was unlawful does not transform a habeas petition otherwise moot by reason of release into a live controversy. *See Chocho v. Shanahan*, 308 F. Supp. 3d 772, 774–75 (S.D.N.Y. 2018) (holding that habeas petition was moot despite claim for declaratory judgment that prior detention violated petitioner's rights given petitioner was released); *Jackson v. Holder*, 893 F. Supp. 2d 629, 631 (S.D.N.Y. 2012) (finding that a habeas petitioner's request for declaratory judgment that "his continued detention was not authorized by the INA and/or violated the Fifth Amendment" was moot after the petitioner was removed and no longer in custody); s*ee also Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) ("As with any federal action, courts may not entertain actions for declaratory judgment when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.") (citation omitted).

**II. No Mootness Exception Applies**

Petitioner also argues that the case is not moot because it falls under two exceptions: (1) the voluntary cessation exception and (2) the "capable of repetition, yet evading review" exception. *See* Pet. Moot Opp'n at 1-7. However, neither exception is applicable.

***A. Voluntary Cessation***

It is well established that a court is not necessarily deprived of jurisdiction to determine the legality of a challenged practice where defendant voluntarily ceases that practice. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Nonetheless, voluntary cessation will render a case moot where the defendant can demonstrate "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cnty of Naussau*, 819 F.3d 581, 603 (2d Cir. 2016) (quoting *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)). The exception is rooted in the principle that a defendant should not be able to evade review "by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001). A party "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.

This exception is unavailing here. Courts have routinely rejected the application of the voluntary cessation exception in the habeas context where, as here, the complaining party—*i.e.*, the petitioner—has been released from custody and there is no reasonable non-speculative expectation the alleged violation would recur. *See Paul v. Decker*, No. 20-cv-2425 (PKF), 2021 WL 1947776, at *5 (S.D.N.Y. May 14, 2021) (finding voluntary cessation exception inapplicable where petitioner was released and there is no reasonable expectation he will suffer the same violation of allegedly unconstitutional conditions of confinement); *Pierre-Paul*, 293 F. Supp. 3d at 493 (finding voluntary cessation exception inapplicable because release "eradicated the alleged

violation and Petitioner can show no reasonable expectation that her detention will recur") (citation modified); *Alcine*, 2019 WL 988944, at *2 (finding voluntary cessation exception inapplicable and noting that mere potentiality of re-detention "is insufficient to warrant this Court's retention of jurisdiction") (citation omitted). Here, Petitioner's release has mooted his claim by providing his full requested relief and there is nothing in the record to suggest that there is a reasonable expectation that the alleged violation that Petitioner faced would recur given that he has now been released to his father and is no longer an UAC, a pre-requisite to be held in custody by ORR. *See* 6 U.S.C. §§ 279(b), (g)(2).

Petitioner, relying on *Mhany Management*, argues that it is irrelevant whether Petitioner will face a recurrence of the alleged violation but rather the proper inquiry is whether the Government will continue the challenged conduct writ large. *See* Mootness Opp'n at 3-4. However, *Mhany Management* does not stand for such a proposition. There, the Second Circuit held that a challenge to discriminatory zoning rules that prevented plaintiff's ability to construct affordable multi-family housing at a designated site was not rendered moot by defendants' decision to build a courthouse on that site instead of proceeding with a private single-family developer. *Mhany Mgmt.,* 819 F.3d at 597-98, 603-05. The defendants argued the case was moot because the plaintiff's injury could no longer be traced to the allegedly discriminatory zoning laws but rather to the intervening decision to construct a courthouse. *Id.* at 603. In applying the voluntary cessation exception, the Second Circuit held defendants' action did not moot the case because they failed to show it was "absolutely clear" the site will never be used for housing and that the defendants would not return to the specific challenged discriminatory conduct that had impacted the plaintiff. *Id.* at 603-05.

Here, Petitioner, through a petition for a writ of habeas corpus, challenges the legality of the Government's decision to hold *him* in custody based on *his* specific circumstances. Accordingly, the relevant inquiry for the voluntary cessation exception is whether that decision—that Petitioner was allegedly unlawfully kept in ORR custody—will recur. *See Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2015) (analyzing voluntary cessation exception and noting the relevant inquiry is whether the alleged violation—*i.e.*, plaintiff's "being denied readmission to Oceanview because of the Regulations—will recur"); *Pierre-Paul*, 293 F. Supp. 3d at 493 (rejecting voluntary cessation exception because "Petitioner can show 'no reasonable expectation' that *her* detention will recur.") (emphasis added). Petitioner otherwise provides no authority that his case is not moot simply because ORR might unlawfully hold a different minor in custody. Such a result would fundamentally flout Article III standing by permitting Petitioner, through a habeas petition, to continue to litigate the legality of the Government's policy essentially on behalf of others who allegedly may be similarly situated. *See American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (litigant generally has no standing to claim violation of rights of third parties).

Further, as the Government points out, this is not a case of strategic mooting where the Government has voluntarily ceased the challenged process by simply short-circuiting it and releasing Petitioner in response to litigation. Mootness Mem. at 3. Rather, the Government released Petitioner only after the entire vetting process of Rivera's sponsor application was completed. *See Doe v. Decker*, No. 18-cv-3573 (GBD) (KNF), 2019 WL 2517091, at *4 (S.D.N.Y. Apr. 4, 2019), *report and recommendation adopted*, No. 18-cv-3573 (GBD) (KNF), 2019 WL 2513838 (S.D.N.Y. June 18, 2019) (finding voluntary cessation inapplicable where the Government did not cease the complained-of conduct but instead released petitioner due to a

binding BIA decision); *Gutierrez v. U.S. Dep't of Homeland Sec.*, No. 18-cv-1958 (PLF), 2019 WL 6219936, at *6 (D.D.C. Nov. 21, 2019) (finding voluntary cessation inapplicable because minor plaintiff was released to mother after completion of reunification process and there was no evidence that reunification only occurred because of the lawsuit). Petitioner counters that the timing in this case reflects strategic mooting because Petitioner was in custody for roughly four months and was released only after the filing of the Petition. Mootness Opp'n at 6-7. But Petitioner fails to acknowledge that the four-month delay is in part due to the fact that Rivera delayed filing his sponsor application until February 2026, over two months after Petitioner was placed in ORR's custody. *See* Biswas Decl. ¶¶ 28, 35. And the record is clear that the Government followed a reasonable vetting process to confirm that Petitioner should be released to Rivera and in fact released him as soon as the DNA test results were received. Accordingly, the voluntary cessation exception is not met.

***B. Capable of Repetition Yet Evading Review***

The "capable of repetition, yet evading review" exception to mootness applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and (2) in the absence of a class action, "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (cleaned up); *Van Wie v. Patakai*, 267 F.3d 109, 114 (2d Cir. 2001) (noting that in the absence of a class action the inquiry must focus on "the *same* complaining party") (emphasis in original). Mere speculation that the same complaining party might be subject to the same challenged conduct is insufficient to show a reasonable probability of recurrence. *See Town of Newburgh, v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025); *Dennin v. Conn. Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101

(2d Cir. 1996). Petitioner bears the burden of demonstrating the applicability of this mootness exception. *Video Tutorial Servs. v. MCI Telecomms. Corp.*, 79 F.3d 3, 6 (2d Cir. 1996).

The Court need not reach whether the challenged action is too short in duration to be fully litigated because Petitioner has failed to establish that there is a reasonable non-speculative expectation that he will be subject to the same challenged conduct. As is obvious, the situation has changed in that Petitioner has now been released to the individual whom vetting confirmed to be his father and is no longer an UAC.

Nonetheless, Petitioner appears to argue there is a risk of re-detention by pointing to Rivera's Declaration. Mootness Opp'n at 6 ("After reading Petitioner's father's affidavit, it will be self-understood to the Court, that there is a reasonable risk that the Petitioner would be re-detained by ORR."). But nowhere in the Rivera Declaration does he ever assert that Petitioner is likely to be placed back in ORR custody, much less provide a credible basis to support such a contention. *See* Rivera Decl. Indeed, the Rivera Declaration exclusively focuses on the negative impact that ORR custody has caused Petitioner. *Id.* Petitioner essentially concedes as much and appears to rest entirely on a speculative fear that he might be re-detained by ORR. *See* Mootness Opp'n at 6 ("[A]lthough Petitioner's father did not overtly state that his son is at risk of being detained again . . . it is obvious that Petitioner's father does contend and feel that his son is at risk of being re-detained by ORR."). Such speculation is plainly insufficient to meet this mootness exception. *See Pierre-Paul*, 293 F. Supp. 3d at 492-93 (finding risk of re-detention speculative in light of cancellation of removal despite three previous detentions because petitioner could "point to no facts indicating that . . . ICE is likely to exercise its discretion to detain her again and re-start her removal"); *Leybinsky*, 553 F. App'x at 110 (finding case moot and explaining that "[i]t cannot be assumed . . . that Leybinsky will continue to violate the terms of his release and become subject

to renewed detention.”). Of course, should Petitioner be placed back in ORR custody because some other federal agency has detained him and then transferred him to ORR, *see* 8 U.S.C. § 1232(b)(3), Petitioner may file a habeas petition in the appropriate federal court. *See Alcine*, 2019 WL 988944, at *2 (“[I]f Alcine is detained in the future, he may bring a new petition or complaint against the government, as appropriate.”).

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that this action is dismissed as moot without prejudice to Petitioner’s ability to seek habeas relief from the appropriate court should he be re-detained.

The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

**Date: August 5, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**